UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LANCE EVANS,

                              Plaintiff,

          -against-

MICHAEL VALENTI,

                              Defendant.

---

**MEMORANDUM AND ORDER**
23-cv-06733-LDH-SLT

LASHANN DEARCY HALL, United States District Judge:

Lance Evans ("Plaintiff"), proceeding pro se, brings the instant action against Michael

Valenti ("Defendant"), asserting claims for breach of contract, copyright infringement, and

multiple acts of fraud.  (Compl. ¶¶ 6–63, ECF No. 1–7.)  Defendant moves pursuant to Federal

Rule of Civil Procedure 12(b)(6) to dismiss the complaint in its entirety.  (Def.'s Mot. Dismiss,

ECF No. 17.)

## BACKGROUND[1]

Beginning in 2007, Defendant offered Plaintiff multiple opportunities to work on

Defendant's musical composition titled "Little Park Across the Street" ("LPATS").  (Compl. ¶¶

6–7.)  Defendant requested Plaintiff's "talents, resources, and production company to create

various products, based on LPATS."  (*Id.* ¶ 8.)  And, Defendant informed Plaintiff that LPATS

was a "new project" that had not been "shopped around."  (*Id.* ¶ 13(a).)  In addition, Defendant

represented to Plaintiff that Defendant would secure investment capital for LPATS from his

network of investors.  (*Id.* ¶ 10(a).)  From the summer of 2007 through the beginning of 2009,

---

[1] The following facts are taken from the Complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

1

Plaintiff and Defendant (collectively, "the Parties") worked on LPATS and other music recordings. (*Id.* ¶ 6.) However, six months into Plaintiff's work on the LPATS, Plaintiff learned that LPATS was not a new project, and that Defendant had previously, albeit unsuccessfully, "shopped" it around to investors. (*Id.* ¶¶ 13(b)-(c).) This discovery indicated to Plaintiff that it was less likely that Defendant would be able to raise the funding he had promised. (*Id.* ¶¶ 13(b)-(d).) Nevertheless, Plaintiff proceeded to perform "massive amounts of work" on LPATS and incurred expenses related to this work. (*Id.* ¶ 10(a).) Defendant did not pay Plaintiff for the work that he performed, nor did Defendant reimburse Plaintiff for the expenses Plaintiff incurred while working on LPATS from 2007 until 2009. (*Id.*)

During "the 2010s[,]" Defendant requested Plaintiff's assistance on a personal project to include headshots, a website, and production on an autobiography for Defendant's personal project unrelated to LPATS. (*Id.* ¶¶ 14(a)-(b).) Defendant communicated to Plaintiff that, should Plaintiff help with Defendant's personal project, Defendant would be placed in a better position to secure funding for LPATS, which would help get LPATS "back on track." (*Id.* ¶¶ 14(a).) Ultimately, Plaintiff provided Defendant with the assistance that he requested on his personal project. (*Id.* ¶ 14(c).) But, Defendant did not pay Plaintiff for that work. (*Id.*) Furthermore, Plaintiff's assistance with Defendant's personal project and additional work on LPATS did not result in any additional funding for LPATS. (*Id.*)

In November 2022, Defendant offered Plaintiff another opportunity to work on LPATS. (*Id.* ¶ 10(b).) Defendant informed Plaintiff that Defendant's creative partner, Elsa, passed away, and that her will transferred her rights to LPATS to Defendant, resulting in Defendant's full ownership of LPATS. (*Id.* ¶¶ 18, 20(a).) Defendant offered Plaintiff: the title of "Executive Producer" of LPATS, which would make Plaintiff responsible for producing the entire project;

2

and the title of "Producer" for LPATS's unpublished sheet music, which would result in Plaintiff receiving revenue from production of the sheet music. (*Id.* ¶¶ 20(d)-(e).) Plaintiff and Defendant agreed to a three-year "cancellation clause" whereby Defendant could take LPATS back if Plaintiff did not publish or produce "anything" in three years. (*Id.* ¶ 20(f).) Plaintiff also agreed to work on raising money to fund LPATS. (*Id.* ¶ 10(b).) However, this agreement was not memorialized in writing. (*Id.* ¶ 20(f).) On April 11, 2023, Plaintiff provided Defendant with a thumb-drive containing work product for LPATS. (*Id.* ¶ 37(j).)

In April 2023, Defendant admitted to Plaintiff that Defendant did not in fact have full ownership over LPATS because Elsa's will did not, in fact, transfer her rights to Defendant but instead transferred her rights to her son (the "Heir"). (*Id.* ¶¶ 25-27.) As a result, Plaintiff contacted the Heir to discuss the Parties' intentions to publish work related to LPATS. (*Id.* ¶ 28.) On May 11, 2013, the Heir agreed to sign an agreement to allow Plaintiff to publish such work. (*Id.* ¶ 36.)

Plaintiff worked on LPATS until its completion in May of 2023. (*Id.* ¶¶ 10(b), 39(a).) On May 25, 2023, Plaintiff presented to Defendant a written agreement to which Defendant responded in an email, "looks pretty good[.]" (*Id.* ¶ 39(f).) Defendant, however, did not execute the agreement. (*Id.*) And, on May 29, 2023, Defendant called Plaintiff to inform him that he did not want the Parties to continue working on LPATS. (*Id.* ¶ 39.) In addition, Defendant refused to offer Plaintiff any compensation for his prior work on LPATS. (*Id.* ¶ 10(b).)

Also, on May 29, 2023, Plaintiff discovered, through a Google search, that Defendant published personal projects using art and photo portraits created by Plaintiff without his permission. (*Id.* ¶¶ 40, 42.) Plaintiff also discovered that Defendant published a musical "demo" of LPATS in violation of the Parties' effective "exclusive publishing agreement." (*Id.* ¶¶ 13(b),

3

44-46.)  When Plaintiff contacted Defendant about his publication of the demo, Defendant removed the demo from some, but not all, of the sites where it was published.  (*Id.* ¶ 52.)

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct.  *Id.*  Although this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at a trial" on a motion to dismiss.  *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true."  *Id.* (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, their pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

4

## DISCUSSION

### I.    Copyright Infringement Claims

A plaintiff asserting a claim of copyright infringement claim must establish (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *Michael Grecco Productions, Inc. v. RADesign, Inc.*, 112 F. 4th 144, 153 (2d Cir. 2024).[2] Of particular relevance here, the Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). That is, according to the Supreme Court, Section 411(a) of the Copyright Act "establishe[d] a condition—copyright registration—that plaintiffs ordinarily must satisfy before filing an infringement claim and invoking the [Copyright] Act's remedial provisions." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 158 (2010). Accordingly, courts in the Second Circuit require a plaintiff asserting a copyright infringement claim to "either (1) hold[] a valid copyright registration, or (2) ha[ve] applied for and [] been refused registration." *See e.g. Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 217-CV-2978, 2017 WL 4564763, at *3 (E.D.N.Y. Oct. 11, 2017) (collecting cases).

---

[2] As a threshold matter, and as Defendant aptly notes, Plaintiff failed to identify the allegedly infringed works in his complaint. (Def.'s Mem. L. Supp. Mot. Dismiss ("Def.'s Mem.") at 9, ECF No. 17-1.) However, in Plaintiff's opposition to Defendant's motion to dismiss, Plaintiff clarified that his first copyright infringement claim is related to the photo taken by Plaintiff of Defendant standing at a piano (the "Piano Photo"). (*See* Pl.'s Response Def.'s Mot. Dismiss ("Pl.'s Response") at 10 ("Ex. D"), ECF No. 16.) Defendant also cites to the Piano Photo as the subject of Plaintiff's first claim for copyright infringement. (Def.'s Mem. at 2.) Thus, the Court construes the Piano Photo as being the subject copyright for Plaintiff's first claim. *BankUnited, N.A. v. Merritt Env't Consulting Corp.*, 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018) ("When deciding a motion to dismiss, a court is entitled to consider . . . documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . .") (quoting *Weiss v. Inc. Vill. of Sag Harbor*, 762 F.Supp.2d 560, 567 (E.D.N.Y. 2011)).

Here, Defendant argues that Plaintiff's infringement claim as to the "Piano Photo" must fail because Plaintiff did not sufficiently allege the first infringed work is registered with the U.S. Copyright Office. (Def.'s Mem. at 9.) Defendant is correct. Absent from the complaint is any allegation that Plaintiff received or even applied for copyright registration. Indeed, it is not until Plaintiff's response submission that Plaintiff provides a document from the U.S. Copyright Office indicating an effective date of registration for the Piano Photo as August 16, 2023, and a registration decision date of March 14, 2024. (Pl.'s Response at 10.) However, the provision of this document does not cure the pleading defect. Copyright registration is a condition precedent that must be met prior to the initiation of a suit. *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 181 (2022) ("A valid copyright registration [is] . . . a prerequisite for bringing a 'civil action for infringement' of the copyrighted work."); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) ("Before pursuing an infringement claim in court, however, a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'"). Each of the provided registration dates post-date the filing of the complaint, which was initially filed in New York State Supreme Court on June 21, 2023.[3] (*See* Notice of Removal at 1, ECF No. 1.) Accordingly, Plaintiff cannot assert a claim of copyright infringement against Defendant for the Piano Photo.[4]

---

[3] Plaintiff also failed to allege that the Piano Photo is subject to any of the Copyright Act's enumerated exceptions that permit instituting a suit without registration. *See* 17 U.S.C. §§ 411 (a), (c)(1)-(2) (permitting a copyright applicant to bring suit "where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused" and permitting a copyright holder to bring suit "[i]n the case of a work consisting of sounds, images, or both, the first fixation of which is made simultaneously with its transmission . . . .")

[4] Nothing about this conclusion operates to prevent Plaintiff from initiating a new copyright infringement suit against Defendant for the Piano Photo, so long as any suit is brought within the proscribed statute of limitations period.

6

Plaintiff's second claim for copyright infringement fares no better.  In Plaintiff's second claim of copyright infringement, Plaintiff complains of Defendant's publication of a musical "demo" of LPATS during the time period in which an "exclusive publishing agreement" was in effect between the Parties.  (*Id.* ¶¶ 13(b), 44-46.)  Specifically, Plaintiff argues that Defendant's publication of the demo "infringed upon the rights of the Plaintiff, who he had an exclusive publishing agreement with[.]"  (*Id.* ¶¶ 45-46.)  However, as the Complaint makes plain, the demo at issue was not created by Plaintiff.  (*Id.*)  Indeed, the label on the demo indicated that the demo was copyrighted in 2000, seven years prior to Plaintiff's engagement with LPATS beginning in 2007.  (*Id.* ¶ 13(b).)  Accordingly, Defendant argues that Plaintiff lacks standing to bring a copyright claim related to the demo because Plaintiff does not have any rights to the demo. (Def.'s Mem. at 11.) ("Plaintiff . . . is neither the legal owner nor an exclusive licensee of the LPATS intellectual property and cannot assert a copyright infringement claim regarding LPATS.")  Here, again, Defendant is correct.  *See Monbo v. Nathan*, 623 F.Supp.3d 56, 131 (E.D.N.Y. 2022) (finding that plaintiff lacks standing to sue for copyright infringement because she is not an "owner of the copyrights" for which she alleges infringement); *see also Urbont v. Sony Music Ent.*, 831 F.3d 80, 87 n.6 (2d Cir. 2016) (noting that the "plaintiffs must prove ownership. . . to assert their standing to bring suit [for copyright infringement]").  Because Plaintiff does not have standing to bring a copyright infringement suit for Defendant's publication of a musical "demo" of LPATS that pre-dated Plaintiff's involvement, Plaintiff's second claim for copyright infringement fails as a matter of law.

## II.    Leave to Amend

Generally, a court should not dismiss a pro se complaint without granting leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim

7

might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation and internal quotation marks omitted). However, among the reasons courts deny leave to amend is futility of amendment. *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 567 F. Supp. 3d 429, 438 (S.D.N.Y. 2021) (describing "good reason" to deny leave to amend on the basis of "undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party.") Futility in amendment exists where "the barriers to relief for [plaintiff's] claims cannot be surmounted by reframing the complaint." *Ashmore v. Prus,* 510 F. App'x 47, 49 (2d Cir. 2013). Against this backdrop, the Court concludes that amendment would be futile.

*First*, an amended complaint will not change the date Plaintiff instituted his copyright infringement suit; amended complaints do not serve as new actions. *United States ex rel. Wood v. Allergan*, Inc., 899 F.3d 163, 172 (2d Cir. 2018) ("[A]mending or supplementing a complaint does not bring a new action, it only brings a new complaint into an action that is already pending." (emphasis omitted).) That is, an amended complaint will still be tethered to the date of the complaint's original filing, which was before Plaintiff obtained copyright registration for the Piano Photo. Thus, amendment of Plaintiff's first copyright infringement claim would be futile because it would still be barred in light of Plaintiff's failure to register the Piano Photo before commencing this action.

*Second*, an amended complaint will not confer standing upon Plaintiff with respect to his second copyright claim. Obviously, Plaintiff's lack of copyright ownership in the musical "demo" of LPATS will not be changed by virtue of filing an amended complaint. *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982) ("The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights.")

8

Accordingly, amendment would be futile with respect to Plaintiff's second claim for copyright infringement.

## CONCLUSION[5]

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiff's motion to amend is DENIED. Plaintiff's first claim for copyright infringement is DISMISSED without prejudice. Plaintiff's second claim for copyright infringement is DISMISSED with prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York
        March 12, 2026

        **/s/ LDH**
LASHANN DEARCY HALL
United States District Judge

---

[5] Having dismissed the federal claims in this action, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C.A. § 1367(c)(3)).